NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2861
_____

BONNIE HYNOSKI; STEPHEN HYNOSKI; CHRISTINE HYNOSKI; TOM
HYNOSKI;
THE BOROUGH OF CENTRALIA; HAROLD MERVINE, as Executor of the Estate of
Lamar Mervine Jr. and Lana Mervine; JOHN KOSCHOFF; HELEN HYNOSKI;
WALTER HYNOSKI,

Appellants

v.

COLUMBIA COUNTY REDEVELOPMENT AUTHORITY; ROSENN JENKINS AND
GREENWALD, LLP;
JOHN T. ZELINKA; GARY TAROLI; STEVEN FISHMAN; C. ALAN WALKER;
BLASCHAK COAL
CORPORATION; COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF
COMMUNITY AND
ECONOMIC DEVELOPMENT
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-10-cv-02222)
District Judge:  Honorable A. Richard Caputo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 26, 2012
_____

Before:  SLOVITER, CHAGARES, and JORDAN, Circuit Judges.

(Filed: June 27, 2012)

---

OPINION

---

CHAGARES, Circuit Judge.

The appellants brought this putative class action lawsuit pursuant to 42 U.S.C. § 1983 alleging, inter alia, that the appellees violated their rights under the Equal Protection Clause of the Fourteenth Amendment in the course of condemning their property through eminent domain. On appeal, the appellants challenge the District Court's refusal to grant a preliminary injunction that would have enjoined the appellees, or anyone acting on their behalf, from taking any action in furtherance of the eminent domain proceedings relating to the appellants' property. We will affirm the orders of the District Court denying the appellants' motion for a preliminary injunction and for reconsideration.

I.

We write solely for the parties' benefit and, as such, we set forth only the facts essential to our disposition. This § 1983 action arose out of eminent domain proceedings in Pennsylvania state court. In 1962, an underground fire was discovered in the vicinity of the Borough of Centralia, Pennsylvania. In 1983, after unsuccessful attempts to extinguish the fire, the Columbia County Redevelopment Authority ("CCRA"), as the agent of the Department of Community Affairs ("DCA"), implemented a program to

relocate willing residents.[1]  The DCA and CCRA thereafter initiated eminent domain proceedings against about sixty property owners who declined to relocate voluntarily.  In 1993, the CCRA, again acting as an agent of the DCA, filed declarations of taking for those properties.  The property owners filed preliminary objections but the condemnation was upheld by the Pennsylvania state courts.  In re Condemnation Proceeding (Borough of Centralia), 658 A.2d 481, 483–85 (Pa. Commw. Ct. 1995).  In April 1996, the United States Supreme Court denied the condemnees' petition for certiorari.  Noble v. Columbia Cnty. Redev. Auth., 517 U.S. 1119 (1996).  The appellants are members of the group whose properties were condemned pursuant to the eminent domain proceedings.

On October 27, 2010, the appellants filed the complaint in this case, followed by a motion for a preliminary injunction.  After the appellees moved to dismiss, the appellants filed an amended complaint on February 3, 2011.  The appellants allege that the appellees have conspired to remove them from their property so that Blaschak Coal Company can benefit from coal mines in the area.  They also maintain that the underground fire was never a threat.  The appellants' Equal Protection claim, which is the only claim mentioned in the motion for a preliminary injunction, is based on the CCRA's alleged settlement and withdrawal of the declaration of taking with respect to one property in the fire impact area, the "Netchel property" ("the Netchel settlement"), but not any of the others.

---

[1]  DCA is the predecessor agency to defendant Commonwealth of Pennsylvania, Department of Community and Economic Development ("DCED").

On March 11, 2011, the District Court denied the motion for injunctive relief on the basis that the appellants had not demonstrated a reasonable likelihood of success on the merits or a risk of irreparable harm. The District Court held that the appellants had not shown a reasonable likelihood of success on the merits because (1) the DCED enjoyed sovereign immunity under the Eleventh Amendment, and (2) the two-year statute of limitations for a § 1983 action had expired when the appellants filed their complaint and they had not alleged facts that would entitle them to application of the "discovery rule." On June 6, 2011, following recusal of the first District Judge, the second District Judge denied the appellants' motion for reconsideration.

On appeal, the appellants contest the District Court's findings that their claims are barred by the statute of limitations and that they were not facing irreparable harm. They also assert that the District Court should have held a hearing before ruling on their motion for a preliminary injunction. The appellants do not appeal the Eleventh Amendment holding.[2]

## II.

The District Court had jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over the appeal from an interlocutory order

---

[2] The appellants report in their brief that a scheduling order has yet to be issued in this case in contravention of the requirement that such an order be issued within 120 days after the defendant is served with the complaint or 90 days after a defendant has appeared. Fed. R. Civ. P. 16(b)(2). This is not an issue properly before us on appeal, as appellants acknowledge.

4

pursuant to 28 U.S.C. § 1292(a)(1). Preliminary injunctive relief is an extraordinary

remedy and courts consider four factors in determining whether such relief is warranted:

> (1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.

Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir.

1994) (quotation marks omitted). For the injunction to issue, the plaintiff must produce

"evidence sufficient to convince the district court that all four factors favor preliminary

relief." Id. We review the District Court's decision to grant or deny a preliminary

injunction for abuse of discretion. Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d

160, 170 (3d Cir. 2001). The District Court's findings of fact are reviewed for clear error

and its conclusions of law receive plenary review. Id.

A.

The statute of limitations for actions brought under § 1983 is drawn from the

general or residual statute of limitations for personal injury actions in the state where the

case is brought. Owens v. Okure, 488 U.S. 235, 249–50 (1989). In this case,

Pennsylvania's two-year statute of limitations for personal injury actions governs. 42 Pa.

Cons. Stat. Ann. § 5524; Sameric Corp. of Del. v. City of Phila, 142 F.3d 582, 599 (3d

Cir. 1998). Under Pennsylvania law, the so-called "discovery rule" tolls the accrual of

the statute of limitations when a plaintiff is unable, "'*despite the exercise of due

diligence,* to know of the injury or its cause.'" Mest v. Cabot Corp., 449 F.3d 502,

510 (3d Cir. 2006) (quoting Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468

5

A.2d 468, 471 (Pa. 1983) (emphasis in original)). Under the discovery rule, the statute of limitations does not begin to run until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." Id. (quotation marks omitted).

The District Court held that the appellants' claims are likely time-barred because the complaint was not filed until almost four years after the Netchel settlement and the appellants did not explain their delay. We agree. The appellants claimed in their amended complaint that the injury here is a continuing violation and that the discovery rule applies because the appellants did not discover the Netchel settlement until "sometime in 2009." Appendix ("App.") 34. There are no allegations in the appellants' brief, motion for a preliminary injunction, or amended complaint that attempt to explain the delay or describe any obstacles that prevented the appellants from discovering the Netchel settlement. Moreover, the appellants do not explain how they eventually learned about the Netchel settlement. The circumstances of the appellants' discovery of the settlement are essential in assessing whether the appellants reasonably should have made the discovery earlier. Without any explanation for the appellants' delay in discovering that information, it is unlikely they will refute the preliminary finding that they brought this action in an untimely fashion.

Nor do the appellants explain how the injury in this case constitutes a continuing violation. The appellants' condemnation proceedings concluded in April 1996, when their petition for certiorari to the United States Supreme Court was denied. Noble, 517 U.S. 1119. Thus, the Netchel settlement appears to be the last occurrence forming the

6

factual basis for the appellants' Equal Protection claim. The appellants have not alleged a continuing pattern, practice, or policy of unequal treatment. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 380–81 (1982) (describing a continuing violation as a number of related incidents). For these reasons, we conclude that the District Court did not abuse its discretion in finding that the appellants' claims are likely time-barred and, as a result, the appellants have not shown a likelihood of success on the merits.

B.

The District Court also held that the appellants had not demonstrated an imminent risk of irreparable injury. Irreparable injury is established by showing that the plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). "The preliminary injunction must be the only way of protecting the plaintiff from harm." Id. Unfortunately for the appellants, we have held that the taking of real property can be adequately remedied by monetary compensation and that the intangible personal connection to property does not render condemnation an irreparable injury. Goadby v. Phila. Elec. Co., 639 F.2d 117, 121–23 (3d Cir. 1981). Thus, the District Court correctly concluded that the appellants did not allege imminent irreparable harm.

Because the appellants have not established a likelihood of success on the merits or a risk of irreparable harm, the District Court did not abuse its discretion in denying their motion for a preliminary injunction. Thus, we need not delve into the appellees' remaining arguments.

C.

We also hold that the appellants' contention that they had a right to a hearing on the preliminary injunction motion is meritless. As the appellants acknowledge, there are no cases establishing an absolute right to a hearing on a preliminary injunction motion. Federal Rule of Civil Procedure 65(a) provides that courts have the discretion to issue a preliminary injunction only after affording the adverse party notice. The rule mentions hearings but does not explicitly require one. See Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1175–76 (3d Cir. 1990); Jackson v. Fair, 846 F.2d 811, 819 (1st Cir. 1988) ("Fed. R. Civ. P. 65 does not give a plaintiff an unqualified right to an evidentiary hearing. . . . [W]e think the better course is to leave the balancing between speed and practicality versus accuracy and fairness to the sound discretion of the district court."). The appellants cite Fuentes v. Shevin, 407 U.S. 67, 81–82 (1972), as support for their position, but that case held that there must be notice and opportunity for a hearing before one's property can be seized pursuant to a prejudgment writ of replevin. Fuentes is not applicable in this case, which does not involve the issuance of an ex parte writ authorizing the seizure of property.

Accordingly, we review the District Court's decision not to hold an evidentiary hearing prior to denying the motion for a preliminary injunction for abuse of discretion. Elliot v. Kiesewetter, 98 F.3d 47, 53 (3d Cir. 1996). A district court is not obliged to hold a hearing where, as is the case here, "the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm."

8

Bradley, 910 F.2d at 1176. Thus, the District Court did not abuse its discretion in declining to hold an evidentiary hearing.

## III.

In accordance with the foregoing, we will affirm the District Court's denial of the appellants' motions for a preliminary injunction and for reconsideration.